IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NORTHERN NATURAL GAS COMPANY,

Plaintiff,

vs.                                                          Case No. 02-1418-JTM

TRANS PACIFIC OIL CORPORATION; BE
USA L.P., 1987-1; VESOCO AND AIR
PIPELINE CORPORATION,

Defendants and
Third Party Plaintiffs,

vs.

SONDRA BOYD, DALMER CRICK,
GERTRUDE CRICK, KATHY EPPERLY,
HERBERT PARK, MARVIN PARK AND
CONNIE SUE PARMELY,

Third-Party
Defendants.

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's Motion for Judgment as a Matter of Law
(Dkt. No. 105) pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial under Fed. R.
Civ. P. 59.  Plaintiff argues that: 1) defendants' damages due to shut in was not properly pled; 2) that
plaintiff did not consent to an award for damages; 3) that the jury was not instructed on the damages for

the shut in of the wells; 4) that the verdict form as to damages was fatally flawed; and 5) that the verdict form contained material misstatement of the law.  Defendants disagree with plaintiff's contentions.  After reviewing the parties' briefs, the court denies plaintiff's motion.

## I. BACKGROUND

The court held trial in this case beginning May 24, 2005. At the close of the evidence, plaintiff orally moved for judgment as a matter of law under Fed. R. Civ. P. 50(a).  The court took plaintiff's motion under advisement. On May 31, 2005, the jury returned a verdict. The jury denied plaintiff relief on all of its claim and rejected all of defendants' counterclaims, save one.  The jury awarded the four defendants $1.14 million each, or $4.65 million collectively, on the counterclaim for damages defendants sustained for the shut in of the wells from November 19, 2002 to the present.  Pursuant to Rule 50, plaintiff challenges the verdict as a matter of law on the grounds listed above.  In the alternative, plaintiff requests a new trial pursuant to Rule 59.

## II. STANDARD FOR JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50 provides that a party may renew a motion for judgment within 10 days after entry of judgment and may alternatively request a new trial under Fed. R. Civ. P. 59.  Fed. R. Civ. P. 50(b).  Where a verdict has been returned, the rule permits the court to allow the judgment to stand, order a new trial or direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1).

A district court may grant a Rule 50(b) motion "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party."  Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir. 1991)

(quoting Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1051 (10th Cir. 1988)), cert. denied, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). The jury's verdict must stand if, "viewing the record in the light most favorable to [the nonmoving party], there is evidence upon which the jury could properly return a verdict for [the nonmovant]." Harold Stores. Inc. v. Dillard Dep't Stores. Inc., 82 F.3d 1533, 1546 (10th Cir. 1996), cert. denied, 519 U.S. 928, 117 S.Ct. 297, 136 L.Ed.2d 216 (1996). The court must "indulge all inferences in favor of the party opposing the motion and cannot weigh the evidence, consider the credibility of the witnesses or substitute its judgment for that of the jury." Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988) (internal quotations omitted). In short, judgment as a matter of law is proper only when "the evidence so strongly supports an issue that 'reasonable minds could not differ.' " Id. (quoting Ryder v. City of Topeka, 814 F.2d 1412, 1418 (10th Cir. 1987)). The motion is cautiously and sparingly granted and then only when the court is certain the evidence "conclusively favors one party such that reasonable men could not arrive at a contrary verdict." Weese v. Schukman, 98 F.3d 542, 547 (10th Cir. 1996) (quoting Western Plains Service Corp., v. Ponderosa Development Corp., 769 F.2d 654, 656 (10th Cir. 1985)).

## III. ANALYSIS

Plaintiff has articulated five grounds for this court to enter a judgment as a matter of law or to order a new trial. The court will review each in turn.

### *Shut in of the Wells*

### A. Whether Defendants Properly Pled Damages in Relation to the Shut In of the Wells

Plaintiff argues that the damages relating to the shutting in of the wells were not properly pled.

Plaintiff contends that there is only scattered reference to the claim in the pretrial order and the jury

instructions.  After reviewing the relevant documents, the court finds that the damages were properly

pled.

The pretrial order clearly sets out that defendants sought damages, including those for the shut

in of the wells. It provided that:

> In addition, Defendants are entitled to damages for lost production due to shutting in the
> wells, in an amount based on historical production amounts, applied to the months in
> question, and to any future periods on similar grounds, based on the value of native oil
> and gas which could be recovered by Defendants.

Pretrial Order, Dkt. No. 57, at p. 24.  The record does not reflect plaintiff having objected to this

damage assertion during the pretrial conference or the instruction conference.  If the parties had not

contemplated damages related to the shut in of the wells, then plaintiff surely would have asked the

court to strike Question 6a and 6b of the verdict form.  Again, the record discloses no objection on this

point.  Plaintiff's argument that it did not see the final verdict form until it was read to the jury is

untenable.  Clearly, counsel was present during the instructions conference and followed the proposed

edits closely.  Counsel objected on other grounds and should have objected to the verdict form if it was

so questionable.

The court finds that the parties were aware that damages may arise from the shut in of the wells

as contemplated in K.S.A. § 55-1210 (providing that the adjoining property holder is entitled to

compensation and recovery of all costs and expenses if the injector does not prevail).  While not

dispositive on the issue, the order formalizing the injunction specifically noted that the defendant was

entitled to damages.  Stipulation Order Regarding Motion for Preliminary Injunction, Dkt. No. 27, at p.

4

4.  The pretrial order's inclusion of damages for shut in of the wells provides a sufficient basis for finding that the damages were properly pled.

**B. Whether the Parties Consented to Damages Relating to the Shut In**

Relatedly, plaintiff argues that it did not consent to litigating shut in damages.  Even if the court were to find that damages were not properly pled, the record indicates that plaintiff consented to the litigation of damages.  A review of the pretrial order, the instructions conference and the final instructions indicates that Northern knew that there was a question of damages as to the shut in of the wells and that the jury clearly would consider this issue.  The instructions as initially sent out by the court and as subsequently edited and given included such damages.  Plaintiff did not object at the instructions conference to questions regarding such damages on the verdict form.  The record is sufficient to hold that plaintiff consented to damages.

**C. Whether the Jury Was Instructed on the Damages Relating to the Shut In**

Plaintiff finally argues that there was no jury instruction on defendants' claim for damages for the shut in of the wells.

The court does not find this to be the case.  Instruction 13 includes the contention that the defendants were seeking compensation for the wells being shut in from November 19, 2002 to the present.  While there was no specific instruction on formulating the damages relating to the shut in of the wells, the jury was instructed regarding damages generally and considered all the evidence submitted.  The jurors' questions as to damages highlight their acuity in determining the salient issues.  The court had offered the parties an opportunity to clarify their positions on damages after the presentation of the jury question, but both parties agreed that it was best that the jury consider all the evidence that had

been submitted over the course of the trial.  Having conceded to the trying of this issue on the evidence

presented, it is now inappropriate to argue that the instructions were inadequate.  As defendants' brief

lays out, there were a number of ways in which the jury could have reached the amount of damages

awarded. The court will not interfere with the jury's determination of damages.

Additionally, the record indicates that Northern did not object to the verdict form including the

possibility of recovery for damages.  Had Northern been so troubled or surprised by the possibility of

recovery for the shut in of the wells, then plaintiff would have surely objected to the inclusion of the

corrollary verdict instructions.

Taken together, the jury instructions and the record provided a sufficient basis for the jury's

verdict. The court finds the requirements of Rule 50 have not been met.

### *Verdict Form*

### D. Whether the Verdict Form was Fatally Flawed in its Description of the Counterclaim

Plaintiff argues that the verdict form was fatally flawed because the phrasing is unclear and there

was no reasonable basis for the jury to have made the finding as to damages.

Question 6a states, "Are defendants entitled to payment from plaintiff Northern for their

damages in relation to the shutting-in of Trans Pacific's wells while this lawsuit was pending?" The jury

answered "yes" and proceeded to the next question. Question 6b asked, "If so, how much in damages,

if any, should each defendant receive?" The verdict form provided one line for the jury to enter an

amount.  A parenthetical followed the question and stated that Trans Pacific would be responsible for

distributing the funds to the working, overriding royalty and royalty interest owners pursuant to their

6

percentage interests in the leases.  From the jury instructions and the verdict form, the jury was already

aware that there were four defendants in this action.  The presentation of the evidence also made clear

that the defendants would have expenses to subtract from any award before Trans Pacific could

distribute the remaining funds to its co-defendants.  In light of the jury instructions that specified the

percentage of interest and the parenthetical notation following Question 6b, the court does not find the

verdict form to be fatally flawed.  The jury clearly awarded each defendant $1.14 million for a total

award of $4.56 million.

The next issue is whether the jury had a basis for the finding as to damages.  As the court noted

in the previous section, there is sufficient evidence to uphold the damages award.  The record of the

instructions conference indicates that plaintiff had no objection to Question 6.

**E. Whether the Verdict Form was Fatally Flawed in its Construction**

Plaintiff argues that the verdict form is fatally flawed because it misstates the law.  Plaintiff

contends that nothing in the statute requires Northern to prove that the gas migrated under defendants'

land after the effective date of the statute, July 1, 1993.

Understanding K.S.A. § 55-1210 requires a review of its history.  Prior to the enactment of this

provision, the Kansas Supreme Court found that the rule of capture applied to nonnative gas that had

migrated to adjoining property.  See Anderson v. Beech Aircraft, Corp., 699 P.2d 1023, 1031 (1985).

Thus, any person who subsequently produces migrated gas would be the effective owner, and any

injector who was not a natural gas public utility lost property rights to the gas upon its migration from

the underground storage facility.  Id.  On July 1, 1993, the state legislature enacted K.S.A. § 55-1210.

The provision confers title to an injector of gas as long as he or she is able to prove by a

7

preponderance of the evidence that such gas was originally injected into underground storage.  The statute confers title to the gas injector and provides a means of determining ownership.  K.S.A. § 55-1210(a), (c).  Subsection (c) describes the standard for asserting ownership of migrated gas and provides a means by which costs are assessed.

Plaintiff argues that the court erred when it instructed the jury to determine whether plaintiff's stored gas migrated to defendants' land after June 30, 1993.  Plaintiff contends that nothing in K.S.A. § 55-1210 requires plaintiff to prove that the gas migrated under the defendants' lands after the effective date of the statute, July 1, 1993.  However, plaintiff's argument controverts the legislative history of K.S.A. § 55-1210.  To follow Northern's reasoning would effectively render K.S.A. § 55-1210 retroactive.  Such an outcome contradicts general principles of statutory construction, which discourages interpreting a statute as retroactive unless the legislature is explicit.  K.S.A. § 55-1210 does not include an explicit provision stating that it is retroactive.  Furthermore, to read K.S.A. § 55-1210 as retroactive is contrary to the Kansas Supreme Court's holding because the state court already had recognized that the rule of capture applied before the July 1, 1993 legislative enactment.  To interpret the statute to apply to gas that migrated before July 1, 1993 would then be an impermissible retroactive interpretation of the statute.  Under these circumstances, the court properly instructed the jury to determine whether gas migrated after June 30, 1993.  Consequently, the court finds no error in the wording of the verdict form.

Even if the court were to construe the first question on the verdict form as flawed, plaintiff did not object to the verdict form during the instructions conference.  Plaintiff also cannot argue that it was surprised at this instruction as this was substantively the same instruction that the court provided the

8

parties before the instructions conference.  Thus, the verdict form as submitted to the jury should stand.

IT IS ACCORDINGLY ORDERED this 23rd day of September, 2005 that the court denies plaintiff's Motion for Judgment as a Matter of Law (Dkt. No. 105).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

10