IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORTHERN NATURAL GAS COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TRANS PACIFIC OIL CORPORATION; BE USA, L.P., 1987-1; VESOCO LLC; and AIR PIPELINE CORPORATION,<br><br>Defendants and Third-Party Plaintiffs,<br><br>vs.<br><br>SONDRA BOYD, DALMER CRICK, GERTRUDE CRICK, KATHY EPPERLY, HERBERT PARK, MARVIN PARK, and CONNIE SUE PARMELY.<br><br>Third-Party Defendants. | Case No. 02-1418-JTM |

MEMORANDUM AND ORDER

The present motion arises on defendant, Trans Pacific Oil Corp. (hereinafter "Trans Pacific") and third-party defendants' motion for an injunction to protect this court's judgment against plaintiff, Northern Natural Gas Co. (hereinafter "Northern") (Dkt. No. 157) and defendants' motion to hold plaintiff in contempt (Dkt. No. 179). For the following reasons, the court denies defendants' motions.

*I. Factual Background:*

Plaintiff, a natural gas company, is engaged in the transportation of natural gas in interstate commerce under the Natural Gas Act, Section 2, 15 U.S.C. § 717a. Plaintiff currently owns a 26,200 acre underground natural storage facility located 60 miles west of Wichita, Kansas ("Cunningham Storage Field" or "Field"). Northern has owned, certificated, and operated the Field since 1977. In 1977 and 1978, the Kansas Corporation Commission ("KCC") and the Federal Energy Regulatory Commission ("FERC") issued Northern a certificate of public convenience and necessity to use the Cunningham Storage Field as a gas storage field which is comprised of the current area of approximately 26,200 acres.

Defendants have oil and gas leases on what are known as the "Park Leases." On the Park Leases, there are two producing wells known as the "Park" and the "Park A." Third-party defendants are comprised of landowners of the "Park" properties who have royalty interests arising out of the oil and gas leases with the defendants and other persons who have overriding royalty interests. On June 1, 2005, a jury found that "On or after July 1, 2993, Northern's stored gas did not migrate to the area of 'No. 1 Park' and 'No. 1 Park A' Wells" and that defendants were entitled to payment from plaintiff Northern for damages in the amount of $1,140,000 for each defendant, for a total of $4.56 million.

Following the jury trial, the Park A well was returned to production on December 21, 2005 and the Park well was returned to production on January 9, 2006. Defendants note that since that time, the Park Leases have produced oil and gas with a value exceeding one million dollars.

Plaintiff then filed its appeal from the 2005 jury trial. Oral arguments were held on January 17, 2007.

Thereafter, plaintiff filed an application before the KCC on June 20, 2006 which seeks a certificate for expansion of the Cunningham Storage Field. Northern based its application on new scientific information including the scope and extent of gas migration across the northern boundary of the Field. Within the application, Northern seeks to acquire 4,800 additional acres for the Storage Field. Defendants submit that in order to prevail in the KCC, plaintiff needs a factual theory which shows that the extension area is geologically connected to Northern's existing storage filed, and therefore, re-litigate the issues litigated unsuccessfully by plaintiff in the 2005 jury trial. However, plaintiff notes that its application merely seeks expansion of its original certificated boundaries for the underground storage of natural gas and related purposes. As part of its application, Northern must demonstrate that the Extension Area is suitable for storage of natural gas and related purposes. Following a suitability demonstration, the KCC will determine whether certification of the Expansion Area is appropriate.

The underlying basis for plaintiff's application before the KCC is new scientific information regarding the scope and extent of gas migration across the northern boundary of the Field. Four new wells were drilled and completed by early 2006. The new wells, plaintiff contends, have revealed and confirmed a wide area of storage gas migration of approximately two miles across the KCC-certificated boundary of the Cunningham Storage Field to the north. Northern's application seeks relief from the KCC to protect the Cunningham Storage Field by addressing the migration to the Extension Area. In its KCC Application, plaintiff advised the KCC of the 2005 verdict and the pending Tenth Circuit appeal.

Between June 30, 2006 and July 10, 2006, defendants filed motions to intervene in the KCC proceedings. On July 28, 2006, the KCC granted defendants' motions, noting that it had proper jurisdiction over all of the parties. On January 4, 2007, the KCC issued an Order Reconsidering the Pre-hearing Conference Order and stayed its proceeding on Northern's Application to await the outcome of the present motion.

Additionally, defendants filed a motion on March 30, 2007 which requested the court to enter an order requiring Northern to immediately withdraw its FERC filing. On July 9, 2007, the court denied defendants' motion to require Northern to withdraw its FERC application (Dkt. No. 207). In denying the motion, the court noted that it lacked jurisdiction to intervene in the FERC proceedings.

Plaintiff submits that it and its experts have completed their analysis, evaluation, and understanding of the newest data and Field conditions. At the time of filing this motion, plaintiff noted that it was preparing the required application informing FERC of the current data and information concerning gas expansion beyond the current certificated boundaries, as well as the failure of two recent recycle wells drilled in 2006 to control the alleged migration. Since the filing however, the court notes that Northern has since filed its application with FERC on March 16, 2007.

Under K.S.A. § 74-623(a), the KCC has statutorily-granted jurisdiction and authority over oil and gas activities within Kansas. Specifically, the KCC's jurisdiction includes: (1) all practices involved in the exploration for and gathering of oil and gas and the drilling, production, lease storage, treatment, abandonment and post-abandonment of oil and gas wells and (2) underground storage of natural gas. Additionally, the KCC is vested with the authority to issue a

certificate regarding underground storage.  This certificate is a mandatory prerequisite for any natural gas utility before commencing any eminent domain proceeding to condemn land for storage purposes.  *See* K.S.A. § 55-1204(a).

FERC is the regulatory body charged with implementation of the Natural Gas Act.  *See* 15 U.S.C. § 717(b).  Under § 7(c) of the NGA, natural gas companies who seek to construct new transportation or storage facilities or expand existing ones must first obtain a certificate of "public convenience and necessity."  15 U.S.C. § 717f(c)(1)(A).

At issue in the present motion is whether this court has jurisdiction to grant defendants' motion for an injunction against Northern from challenging the judgment of this case in its application before administrative agencies, including the KCC and FERC.  Additionally, this court will consider defendants' motion for contempt.

## II.  Standard of Review and Conclusions of Law:

### A.  The KCC Proceedings:

Defendants primarily argue that an injunction is appropriate pursuant to the Anti-Injunction Act (the "Act").  Under the Act:

> A court of the United states may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.  Defendants claim that if the KCC is not a "State court" then the restrictions of the Act do not apply.  Moreover, they argue, if the KCC proceedings are "in a State court," then the injunction must meet one of the exceptions of the Act, namely that the injunction is necessary to protect and/or effectuate the judgment.  The third exception – "to protect or effectuate its

judgments" – is known as the "re-litigation" exception. *Brooks v. Barbour Energy*, 804 F.2d 1144 (10th Cir. 1986). However, "in determining whether an injunction should issue, a court should resolve doubts against issuing the injunction and narrowly construe the Act's three exceptions." *Id*. at 1146 (internal citations omitted). Finally, a court should limit the application of the re-litigation exception 'to those situations in which the state court has not yet ruled' whether the federal judgment is *res judicata*." *Id*. (citing *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986). For the following reasons, the court finds that the Act is inapplicable to administrative proceedings.

     First, it is generally held that the Act does not apply to state administrative proceedings. *Entergy, Arkansas, Inc. v. Nebraska*, 210 F.3d 887, 900. In *Entergy*, the court noted that "[w]hile the Supreme Court has expressly declined to address whether the Anti-Injunction applies to state administrative proceedings, *see Gibson v. Berryhill*, 411 U.S. 564, 573 (1973), every circuit to have addressed the question has held that it does not." *Id*. (citing *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1271 (9th Cir. 1995); *SMA Life Assurance Co. v. Sanchez-Pica*, 960 F.2d 274, 276 (1st Cir. 1992); *Kerr-McGee Chemical Corp. v. City of West Chicago*, 914 F.2d 820, 824 (7th Cir. 1990); *American Motors Sales Corp. v. Runke*, 708 F.2d 202, 204-05 (6th Cir. 1983); and *Engelman v. Cahn*, 425 F.2d 954, 958 (2d Cir. 1969)). *See also Ford Motor Co. v. Woods*, No. 04-1733, 2006 WL 1581177, at *2 (W.D. La. June 6, 2006) (citing *Entergy*, 210 F.3d at 900); *East West Resort Transp., LLC v. Sopkin*, 371 F. Supp. 2d 1253, 1265 (D. Colo. 2005) (citing *Entergy*, 210 F.3d at 900); *National R.R. Passenger Corp. v. Pennsylvania Public Utility Comm'n*, 159 F. Supp. 2d 28, 34 (E.D. Pa. 2001) (citing *Entergy*, 210 F.3d at 900). Therefore, the court finds that the Act is inapplicable to the present case.

Notwithstanding the inapplicability of the Act, the court finds that an injunction is inappropriate in the present case.  Plaintiff argues that the requested injunction is prohibited by the *Younger* Abstention Doctrine and the Eleventh Amendment.  The court agrees.  "Younger abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  In *Ohio Civil Rights Comm'n. v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986), the Supreme Court extended the *Younger* doctrine to state administrative proceedings:

> Because of our concerns for comity and federalism, we thought that it was "perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."

*Id*. at 627 (quoting *Younger v. Harris*, 401 U.S. 37, 45 (1971)) (emphasis in original).

Thereafter, the Tenth Circuit held that a federal court "must abstain" from exercising jurisdiction when "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Amanatullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Taylor v. Jacquez*, 126 F.3d 1294, 1297 (10th Cir. 1997), cert. denied, 523 U.S. 1005 (1998)).  The *Younger* abstention doctrine must be invoked when the three conditions are met, absent

extraordinary circumstances. *Id*. *See also Seneca-Cayuga Tribe of Okla. v. State of Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989).

The application of *Younger* is appropriate in this case. First, the KCC proceedings were ongoing when defendants petitioned the Tenth Circuit for partial remand and when defendants filed the present motion. *See e.g., Weitzel v. Division of Occupations and Prof. Licensing*, 240 F.3d 871, 876 (10th Cir. 2001) ("ongoing" means that a state action is pending). Second, the KCC is equipped to determine defendants' collateral estoppel claims. Moreover, the KCC has set a briefing schedule and was prepared to rule on the issue. *See* K.S.A. § 77-519 (agencies can allow parties to submit briefs and grant motions to dismiss or for summary judgment); Defendants' Exh. 14. Additionally, the KCC's final agency action is subject to judicial review under K.S.A. § 66-118c which notes that judicial review is available under K.S.A. § § 77-601 *et seq*. Finally, the Kansas legislature has noted that underground storage of natural gas is in the public interest and issues involving natural gas storage are exclusively within the KCC's jurisdiction under Kansas law. *See* K.S.A. § 55-1202; K.S.A. § 74-623(a). For these reasons, the court finds that the application of the *Younger* abstention doctrine is appropriate and therefore will abstain from exercising jurisdiction in the present case.

Furthermore, the court finds that legal authority supports the proposition that the KCC is the most appropriate forum to determine issues of collateral estoppel. In *EDO Corp. v. Beech Aircraft Corp.*, 755 F. Supp. 985, 987 (D. Kan. 1991), the court stated: "The court finds that any possible collateral estoppel effect of this court's judgment in relation to the currently pending litigation can and should be decided by those courts [where such litigation is pending], not by this court." *See also Neagle v. Brooks*, 373 F.2d 40, 44 (10th Cir. 1967) ("Whenever a judgment

is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res judicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case."). For this reason, the court will not intervene in the KCC proceedings.

*B. FERC Proceedings:*

The court also refuses to intervene in the ongoing FERC proceedings. As noted in the July 9, 2007 Memorandum and Order (Dkt. No. 207), this court lacks jurisdiction to enter an injunction against re-litigation for plaintiff's claims before FERC. As noted in the Memorandum and Order, Congress has exclusively charged FERC with the duty of serving as guardian of the greater public interest in determining whether a certificate of public convenience and necessity should be granted, which plaintiff currently seeks. *See Williams v. City of Oklahoma City*, 890 F.2d 255 (10th Cir. 1989); *see also City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958); *Dominion Transmission Inc.*, 97 F.E.R.C. P 63,344 (2001); *ANR Pipeline Co.*, 76 F.E.R.C. P 61,263 (1996); *Commonwealth of Virginia v. Tennaco, Inc.*, 538 F.2d 1026 (4th Cir. 1976). Additionally, the court held in the previous order, "[c]ourts are not authorized to interfere by injunction or declaratory judgment with the conduct of pending administrative proceedings." *Riss & Co. v. I.C.C.*, 179 F.2d 810, 811 (D.C. Cir. 1950) (citing *Macauley v. Waterman Steamship Corp.*, 327 U.S. 540, 545 (1946); *Federal Power Commission v. Arkansas Power & Light Co.*, 330 U.S. 802 (1947); *Securities & Exchange Commission v. Otis & Co.*, 338 U.S. 843 (1949)). Currently, the FERC proceedings are pending and therefore, this court will not issue a permanent injunction against re-litigation in the FERC proceedings.

*C. Motion for Contempt:*

Defendants also argue that the court should hold plaintiff in contempt based on an alleged violation of this court's April 9, 2007 order. On April 9, 2007, this court issued an order which required Northern to stay its FERC application until the court's determination of the defendants' requested preliminary injunction. Thereafter, plaintiff submitted a letter to the Secretary of FERC on April 10, 2007 which stated:

> The United States District Court for the District of Kansas, in Case No. 02-1418, Northern *Natural Gas Co. v. Trans Pacific Oil Corp., et al.*, following hearing on a pleading captioned, "Defendant's and Third-Party Defendants' Motion for a Preliminary Injunction Against Northern's New FERC Litigation," issued an order on April 9, 2007, compelling Northern Natural Gas Company to request on April 10, 2007, that the Commission stay its processing of Northern's application in Docket No. CP07-107-000 pending further order of the Court. This filing is made as directed by said order.

Dkt. No. 175, Exh. A. Thereafter, on March 25, 2007, plaintiff filed an Answer to comments filed on April 10, 2007 by the KCC and the letter filed on April 11, 2007 by Trans Pac. In the Answer, plaintiff noted: "Northern believes the Court exceeded its jurisdiction in requiring Northern to request a stay." Dkt. No. 178, Exh. 1. In the oral hearing held on April 26, 2007, defendants argued that the Answer violated the court's April 9, 2007 order because plaintiff told FERC that this court exceeded its jurisdiction instead of simply noting that the court directed plaintiff to request a stay. Plaintiff responded that it was trying to note jurisdictional issues.

The purpose of civil contempt is "to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Law v. National Collegiate Athletic Ass'n*, 134 F.3d 1438, 1442 (10th Cir. 1998). In order to demonstrate a basis for civil contempt, the movant must show "that a valid court order existed, that the [nonmovant]

10

had knowledge of the order, and that the [nonmovant] disobeyed the order." *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998). If the showing is established, the non-movant may avoid contempt if it demonstrates that it attempted compliance in good faith based on a reasonable interpretation of the order. *See Braintree Labs, Inc. v. Nephro-Tech, Inc.*, 99 F. Supp. 2d 1300, 1303 (D. Kan. 2000).

After a full examination of the facts, the court is now convinced that plaintiff has shown a good faith effort to comply with the order in its April 10, 2007 letter and April 25, 2007 Answer. In the letter to FERC, plaintiff advised FERC of the April 9, 2007 proceedings in which the court instructed plaintiff to request a stay. However, with respect to the April 25, 2007 Answer, plaintiff should not have stated that it believed the district court exceeded its jurisdiction in requiring Northern to request a stay. This statement borders on violating the good faith demonstration. Plaintiff, though, proceeded with its jurisdictional argument, which is acceptable. For this reason, the court finds that although plaintiff should not have included the statement with respect to this court's jurisdiction to order a stay; in total, it has demonstrated a good faith effort in compliance with the April 10, 2007 order. For this reason, the court denies defendants' motion.

IT IS ACCORDINGLY ORDERED this 22nd day of August, 2007 that defendants' motion for an injunction (Dkt. No. 157) is denied and defendants' motion to hold plaintiff in contempt (Dkt. No. 179) is denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE